John S. Shields (SBN 332363)
shieldslitigation@gmail.com
**SHIELDS LITIGATION PC**
888 Prospect Street, Suite 200
La Jolla, CA 92037-4261
T: 858.203.1500

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **Adrienne Love**, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>**Airbnb, Inc.**, a Delaware corporation, **Sound Made Public, Inc.**, a California corporation, **Folio Literary Agency**, a New York entity, **The Gotham Group, LLC**, a California limited-liability company, **3 Arts Entertainment, LLC**, a Delaware limited-liability company, **Creative Artists Agency, LLC**, a Delaware limited-liability company, **William Morris Endeavor Entertainment, LLC**, a Delaware limited-liability company, **Simon & Schuster, LLC**, a New York limited-liability company, **Paramount Pictures Corporation**, a Delaware corporation, **Temple Hill Entertainment, Inc.**, a California corporation, **TFC Management, LLC**, a California limited-liability company, and individuals **Jeff Kleinman**, **Erin Harris**, **Marly Rusoff**, **Tara Bohn**, **Alexis Gargagliano**, **Jenny Gadd**, **Danielle Zloto**, **Erin Malone**, **David Stone**, **Mollie Glick**, **Andrianna deLone**, **Trish Todd**, **Lindsay Sagnette**, **Fiora Elbers-Tibbitts**, **Libby McGuire**, **Sean deLone**, and **Rebecca Serle**,<br><br>  Defendants. | Case No. 2:25-cv-01779-AB-KS<br><br>**First Amended Complaint for Copyright Infringement, Breach of Fiduciary Duty, Breach of Contract, Promissory Estoppel, Intentional Interference with Contractual Relations, Tortious Interference with Prospective Business Advantage, Intentional Misrepresentation, Negligent Misrepresentation, Negligence, Conversion, Intentional Infliction of Emotional Distress, Stalking, Conspiracy, Bus. & Prof. Code § 17200 et seq., Accounting, Constructive Trust, and Declaratory Relief**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), for her First Amended Complaint, Plaintiff Adrienne Love ("Love") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this dispute including all claims presented hereinbelow pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367(a), as this action arises under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, as well as supplemental jurisdiction over all other claims hereinbelow forming part of the same case or controversy.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a) as each Defendant resides and/or may be found in this District.

## PARTIES

3.      Plaintiff Love is an individual residing in, and a citizen of, the State of California.

4.      On information and belief, Defendant Airbnb, Inc. ("Airbnb") is a Delaware corporation having a principal place of business in San Francisco, California.

5.      On information and belief, Defendant Sound Made Public, Inc. ("SMP"), a California corporation having a principal place of business in San Francisco, California.  SMP worked with Airbnb on Love's projects at issue.

6.      On information and belief, Defendant Folio Literary Agency ("Folio") is New York entity having a principal place of business in New York.  Folio was involved in developing Love's projects at issue.

7.      On information and belief, Defendant The Gotham Group, LLC ("Gotham") is a California limited-liability company having a principal place of business in Los Angeles, California.  Gotham was a manager for Love's projects at issue.

8.      On information and belief, Defendant 3 Arts Entertainment, LLC ("3 Arts") is a Delaware limited-liability company having a principal place of business in Los Angeles, California.  3 Arts was a manager for Love's projects at issue.

9.      On information and belief, Defendant Creative Artists Agency, LLC ("CAA") is a Delaware limited-liability company having a principal place of business in Los Angeles, California.  CAA was an agent for Love's projects at issue.

10.     On information and belief, Defendant William Morris Endeavor Entertainment, LLC ("WME") is a Delaware limited-liability company having a principal place of business in Los Angeles, California.  WME was and is an agent for the infringing and unlawful projects at issue.

11.     On information and belief, Defendant Simon & Schuster, LLC ("S&S") is a New York limited-liability company having a principal place of business in New York, New York.  S&S was and is an agent for the infringing and unlawful projects at issue.

12.     On information and belief, Defendant Paramount Pictures Corporation ("Paramount") is a Delaware corporation having a principal place of business in Los Angeles, California.  Paramount was and is a producer for the infringing and unlawful projects at issue.

13.     On information and belief, Defendant Temple Hill Entertainment, Inc. ("Temple Hill") is a California corporation having a principal place of business in Los Angeles, California.  Temple Hill was and is a producer for the infringing and unlawful projects at issue.

14.     On information and belief, Defendant TFC Management, LLC ("TFC") is a California limited-liability company having a principal place of business in Los Angeles, California.  TFC was and is a producer for the infringing and unlawful projects at issue.

15.     On information and belief, Defendant Jeff Kleinman ("Kleinman") is an individual residing in New York.  Kleinman was involved in developing Love's projects at issue.

16.     On information and belief, Defendant Erin Harris ("Harris") is an individual residing in New York.  Harris was involved in developing Love's projects at issue.

17.     On information and belief, Defendant Marly Rusoff ("Rusoff") is an individual residing in New York.  Rusoff was a literary agent for Love's projects at issue.

18.     On information and belief, Defendant Tara Bohn ("Bohn") is an individual residing in Los Angeles.  Bohn was involved in developing Love's projects at issue, as an assistant to Shari Smiley.

19.     On information and belief, Defendant Alexis Gargagliano ("Gargagliano") is an individual residing in New York.  Gargagliano was an editor for Love's projects at issue.

20.     On information and belief, Defendant Jenny Gadd ("Gadd") is an individual residing in San Francisco.  Gadd was involved at Airbnb in developing Love's projects at issue.

21.     On information and belief, Defendant Danielle Zloto ("Zloto") is an individual residing in San Francisco.  Zloto was involved at Airbnb in developing Love's projects at issue.

22.     On information and belief, Defendant Erin Malone ("Malone") is an individual residing in Los Angeles.  Malone was an agent for the infringing and unlawful projects at issue.

23.     On information and belief, Defendant David Stone ("Stone") is an individual residing in Los Angeles.  Stone was a manager and producer for the infringing and unlawful projects at issue.

24.     On information and belief, Defendant Mollie Glick ("Glick") is an individual residing in New York.  Glick was a literary agent at CAA for the infringing and unlawful projects at issue.

25.     On information and belief, Defendant Andrianna deLone ("AdeLone") is an individual residing in New York.  deLone was an agent for Love's projects at issue.

26.     On information and belief, Defendant Trish Todd ("Todd") is an individual residing in New York.  Todd was an editor at Atria Books of S&S for the infringing and unlawful projects at issue.

27.     On information and belief, Defendant Lindsay Sagnette ("Sagnette") is an individual residing in New York.  Sagnette was an editor at Atria Books of S&S for the infringing and unlawful projects at issue.

28.     On information and belief, Defendant Fiora Elbers-Tibbits ("Elbers") is an individual residing in New York.  Elbers was an editor at Atria Books of S&S for the infringing and unlawful projects at issue.

29.     On information and belief, Defendant Libby McGuire ("McGuire") is an individual residing in New York.  McGuire was a publisher at Atria Books of S&S for the infringing and unlawful projects at issue.

30.     On information and belief, Defendant Sean deLone ("SdeLone") is an individual residing in New York.  deLone was an assistant to the editor-in-chief at Atria Books of S&S for the infringing and unlawful projects at issue.

31.     On information and belief, Defendant Rebecca Serle ("Serle") is an individual residing in Los Angeles.  Serle is the named author of the infringing novel "One Italian Summer" ("OIS") and derivative, infringing and unlawful projects at issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **GENERAL ALLEGATIONS**

32.     Truth shall burn the cloak of deception.

33.     In about 2017, Plaintiff Love traveled twice to The Amalfi Coast of
Italy and soon began writing an original manuscript for a personal memoir based on
her own life entitled "Eat the Lemon: A Journey to Amalfi in Search of My
Mother's Missing Cookbook" ("ETL" or the "ETL Work"), while working as an
artist-in-residence at the prestigious Djerassi Resident Artist Program in Silicon
Valley and later on campus at her alma mater, Vermont College of Fine Arts, where
she met Defendant Kleinman who was giving a lecture on pitching agents.

34.     Love owns a copyright registration in and to the ETL Work, U.S.
Copyright Registration No. TXu002385900.  Love is the owner of all copyrights in
and to the ETL Work, which copyrights have never been assigned, licensed, or
otherwise transferred.  Attached herewith as **Exhibit A** is a true and correct copy of
the copyright registration record.

35.     The ETL Work tells the story of Love's character visiting The Amalfi
Coast of Italy while grieving and overcoming her mother's death from cancer.  Love
shifts time to reconnect with her deceased mother, while both of them are young in
their 30s.  Also in real life, Love traveled many times to Positano, Italy, following
her character's move from California to Positano, where Love's real-life mother
spent significant time when she was younger.

36.     The ETL Work is Love's original, personal manuscript of her travels to
The Amalfi Coast of Italy to seek a connection to her mother after she died from
mis-diagnosed cancer.  Love's mother always romanticized The Amalfi Coast, and
specifically Positano and thought it was a special place.  There, Love underwent a
personal transformation by connecting with the locals and creating incredible
memories.  On a personal mission to find her mother's cooking teacher, Love was
able to connect with people who knew her mother from when she spent time in

Positano in her thirties.  However, this adventure was not without sacrifice, as Love left her five year-long partner in California to pursue this transformative experience in Italy alone.

37.    In mid-2018, Love began meeting with literary agents, including Defendants Jeff Kleinman and Marly Rusoff.  After agreeing to representation with Rusoff, the agents began discussions about potential interest in the ETL Work, including with Defendant Airbnb.

38.    In early 2019, Airbnb provided a proposed agreement concerning film and book rights to the ETL Work.  In an April 2019 meeting between Love's many agents and representatives, and Airbnb's representatives, the level of interest in the ETL Work is high, but curiously during the meeting Love was requested to leave the discussion to allow the representatives to speak more directly.  Attached herewith as **Exhibit B** is a true and correct copy of an October 6, 2020 Quitclaim & Assignment Agreement signed by Airbnb.

39.    In May-June of 2019, Love's agent Shari Smiley shared the ETL manuscript and ideas with numerous parties.  Coincidentally, Defendant Rebecca Serle supposedly begins writing the infringing work "One Italian Summer."

40.    In May-October 2019, Love provided several drafts of her ETL manuscripts to Defendant Alexis Gargagliano, including a final draft provided to Defendant Marly Rusoff.  Attached herewith as **Exhibit C** is a true and correct copy of a February 10, 2021 Certificate of Engagement signed by Gargagliano.

41.    Defendants Rusoff and Gargagliano at times suggested that Love should find new agents.  Attached herewith as **Exhibit D** is a true and correct copy of letter dated May 2019 to Defendant Gotham signed by Defendant Rusoff.

42.    In January-March 2020, Nion McEvoy of Chronicle Books expressed interest in Love's ETL manuscript, and Defendant Gargagliano provided Love's

book pitch package to several agents including those representing Defendant Rebecca Serle.

43.    By this time, Love's pitch materials, including her manuscript and an audio interview, were sent to CAA agent Defendant Mollie Glick, WME agent Defendant Erin Malone, and International Creative Management ("ICM") agent Defendant Andrianna deLone and Anna Stein.  In April 2020, Defendant Andrianna deLone offered representation, which Love accepted soon thereafter.  Love and deLone worked together on opportunities for the ETL Work for the rest of 2020 and into 2021.

44.    In 2022, Defendant CAA acquired ICM, including Defendant deLone moving to CAA.

45.    Defendant deLone initially promised Love that ETL would move forward in an expedited fashion due to market demands and existing interest from serious buyers such as Airbnb, Chronicle Books, and HarperCollins Book Publishers.  For example, Airbnb was planning to create a studio and sought to have ETL be its first movie.  Love also received sponsorship offers based on the excitement surrounding her ETL Work.  Despite this strong interest, her agents and others advised her to decline these offers.

46.    On information and belief, a network of conspirators including some of Love's trusted advisors had other plans to have the ETL story be told by Defendant Rebecca Serle, a well-known author, to facilitate a presumptively greater financial reward from using Serle's name in an infringing publication and movie deal.  On information and belief, Love's agents shared several of her manuscripts with other agents and publishers, including CAA, Simon & Schuster, and Serle's agents and editors, and strung Love along at the same time.

47.    On March 5, 2021, deLone sent Love's ETL manuscript to Trish Todd ("Todd"), Vice President and Executive Editor of Atria Books.  Todd passed on the

manuscript but said "This is a wonderful story, almost like a novel," and included a cc to Defendant Elbers.

48.    On March 19, 2021, the book announcement for OIS was released, including a sample chapter.

49.    On January 18, 2022, deLone emailed an announcement for OIS to Love, something she had never done in the past.  Love immediately thought the summary of the novel sounded remarkably similar to ETL.  However, following her personal rule against unintentional influence, Love did not investigate.

50.    On March 1, 2022, OIS was published.  Love saw the cover art of the novel and immediately recognized it as Hotel Poseidon in Positano.  Love then decided to review some stories and photographs about the book, and a sample chapter on the Simon & Schuster website.

51.    Instantly, Love was sick to her stomach.  She realized the sample chapter was the first chapter of her memoir.  Concerned, Love reached out to her agent and intellectual property attorney expressing her worry that "something was wrong."

52.    Love's attorney recommended she read OIS.  She read it and was flabbergasted by the similarities, including the names of her own family members and her similar experiences and friends in Positano.

53.    In March 7, 2022, Love's IP attorney Andre Des Rochers, suddenly terminated the representation, and Love sought further legal counsel from attorney Mike Weiss and Mike Trauben.

54.    At the time, Love was unaware of any connection to Serle.

55.    Love requested assistance from her agent to handle the situation on multiple occasions.

56.     On April 20, 2022, deLone and ICM dropped Love as a client.  deLone told Love their trust was broken, she could no longer represent Love, and then halted all communication.

57.     When Love sought help from her agent in April 2022, and asked for the list of publishers to whom her manuscript(s) had been submitted, Defendant deLone at ICM halted all communication.  Love learned that deLone's husband, Sean deLone, worked for Simon & Schuster.

58.     Love later discovered that WME agent Erin Malone, with whom Love's manuscript was shared in March 2020, was Serle's agent.  Love also learned that CAA agent Mollie Glick, with whom Love's manuscript was shared in March 2020, was Serle's former agent.  At the time, Serle and Glick were promoting a film adaptation of Serle's novel "When You Were Mine."

59.     Love also learned that Atria Books, with whom Love's manuscript was shared via Trish Todd, was the publisher for OIS.

60.     Additionally, Love learned that deLone's husband, Sean deLone, was Assistant to the Editor at Atria Books.

61.     Upon information and belief, Love alleges that Serle had access to Love's copyrighted ETL manuscript through any of these individuals.

62.     In June 2022, Love travelled to Positano, where her friends remarked to her that OIS was Love's story.  Defendant Serle coincidentally travelled to Positano, mere hours after Love arrived, to do a "surprise" book signing at the very hotel that was central to ETL and thus OIS, and which hotel was run by Love's dear friends.

63.     Love believes she was being surveilled as Serle seemed to be duplicating the experiences Love was posting on her social media, as exemplified in the photograph comparisons hereinbelow.  Love was also approached by numerous friends who asked her about the similarities between her life and OIS, as well as by unfamiliar individuals.  The unfamiliar individuals randomly but repeatedly

appeared, and clearly knew who Love was.  They attempted to engage in discussions with Love, including concerning literary agencies, and told her that they worked for government agencies, including the FBI.  Eerily, on more than one occasion, these people attempted to lure Love into taking a walk together.  These additional encounters further terrified Love.

64.    Some of Love's friends in Positano also turned their backs on her.  On information and belief, they recognized OIS as Love's story, and were offended that OIS disparaged their businesses or described a salacious affair between Love's character (in OIS) and a then-married man, even though such affair never occurred.

65.    A report of an unusual death of another woman in Positano, also in the publishing/writing industry, and also named Adrienne, further frightened Love.  This unusual death, caused by a boat captain making an odd boating maneuver that threw the woman from the boat and crushed her between two boats, was not an isolated incident.  Around the same time, Love's first agent for the ETL Work was found dead, hanging in a closet, which her husband maintains could not have been suicide.

66.    Not only has OIS isolated Love from those who had been her close friends by virtue of its content, but also it left Love not knowing who to trust.  Terrified for her life and with essentially no one to turn to, Love withdrew from the world, removed her online presence, and locked herself away for months.

67.    Love felt betrayed and angry, and when she attempted to get help from her editor Gargagliano, she "fired" Love too.  Love said, and contemporaneous writings confirm, these factors cumulatively left her alone, spiraling downward into a suicidal state.

68.    "One Italian Summer" by Rebecca Serle follows a female protagonist, Katy, through her travels in Positano, Italy.  Katy decides to travel to Positano shortly after her mother's death from cancer to seek a connection with her.  Katy's

mother always romanticized Positano and thought it was a magical place.  Katy underwent a personal transformation by connecting with locals and creating incredible memories.  Katy is transported back to 1992 and meets a version of her mother in her thirties.  Katy was able to connect with the younger version of her mother in Positano and learn about herself and their relationship.  However, this adventure is not without sacrifice, as Katy left her five-year-long husband in California to pursue this transformative experience across the world.

69.    Serle supposedly began writing OIS in April 2020.  *See* Rebecca Serle, One Italian Summer: A Novel 253 (Atria Books, 2022).  OIS debuted at number two on the New York Times Best Seller List.

70.    Within three weeks of OIS's release, there was widespread international press including a feature on *Good Morning America* and a Jumbotron advertisement in New York City's Times Square.

71.    OIS was released worldwide and received good consumer reviews on Amazon, Goodreads, and various independent and commercial blogs.

72.    In October 2022, OIS received film deal from Defendant Paramount, and in March 2023, PPC acquired the rights to OIS, where Serle will serve as an executive producer.

## Substantial Similarities

73.    On information and belief, in writing the novel "One Italian Summer," Defendant Serle intentionally, willfully, and without authorization used and misappropriated the setting, characters, plot and sequence of events, themes, motifs, mood, and pace found in Love's ETL Work, "Eat the Lemon."

74.    While not copied word-for-word, OIS has countless detailed striking similarities to Love's submitted manuscripts.  Be it the Aveeno face cream, the Frank Sinatra music playing in the background, and even the name of a

controversial central character, OIS is replete with intricate personal details from Love's life and manuscript.

75.    Through this copyright infringement, Defendant Serle effectively interjects herself into Love's life and stands in her shoes to tell the detailed story of Love's highly personal experiences.  Not only does OIS "borrow" the details of Love's life described in her manuscripts, but it also misappropriates the same overarching story and theme.

76.    This was not a typical copyright infringement; rather, it was undertaken in the most egregious way.  Through concerted and calculated maneuvering, the conspirators manipulated and preyed upon Love and capitalized upon her prior traumas, which included physical abuse, to ultimately terrorize and silence her into submission so that she would not challenge them and disrupt their plan.

77.    A chief conspirator was Defendant Gargagliano, with whom Love shared that her life was being usurped, that she believed she was being stalked, and that she was very afraid.  In response, Gargagliano told Love callously to have Defendant Serle sign a copy of OIS and address it to Love's dead mother!

78.    OIS, written by Serle and published by Atria Books (a division of Simon & Schuster), spent 14 weeks on the New York Times Bestseller List, achieving a number two ranking.  Barnes and Noble featured it as their monthly national book club selection in March 2022.

79.    Defendant Paramount acquired the movie rights after a competitive bidding process, and is currently producing a movie with Defendant Temple Hill (which produced *Twilight*), with Zoey Deutch playing Love's character, and with Elizabeth Olsen playing her mother.  Defendant Serle wrote the screenplay, and is an executive producer on the film project, along with Defendant Stone.  The OIS book has been translated into numerous foreign languages, and the audiobook is narrated by Lauren Graham who is represented by CAA.

80.    A striking example of this maneuvering and manipulation is Defendant Serle's copying of Love's real-life social media photos staged in the same Positano locations, wearing the same clothes, using the same poses and with the same people. The following are mere examples:

| Adrienne Love | Rebecca Serle |
|---|---|
|  |  |
| Black-chequered top | Same black-chequered top |
|  |  |
| Adrienne in the hotel with owner Carmela | Rebecca in the hotel with owner Monica |



| Adrienne Love | Rebecca Serle |
|---|---|
| Adrienne in little white boat, legs crossed, with a straw hat with a dark band and nude Havaiana sandals | Rebecca in little white boat, legs crossed, with a straw hat with a dark band and nude Havaiana sandals |
| Adrienne with mother figure to whom Adrienne dedicated ETL | Rebecca in same arranged pose with the mother figure to whom Rebecca dedicated OIS |

<u>Setting</u>

81.    Both novels are set on the Amalfi Coast of Italy in quaint, family-run hotels.

82.    The hotels are actual places on the Amalfi Coast and not fictional.

83.     Both authors chose The Amalfi Coast, and specifically Positano,
because each author's mother, both in the novel and in their actual lives,
romanticized the town.  Each mother in the novels spent time on the Amalfi Coast in
her youth and connected with the city, people, and experiences.

<u>Characters</u>

84.     The protagonists are young, female characters who are lost and
heartbroken after her mother's death from mis-diagnosed cancer.  Each leaves a
five-year male partner at home in California to travel to Positano alone.  Each seeks
a connection to their mother in the town in which their mother last was young and
happy.

85.     Each mother dies from debilitating cancer early in the novel.  Each
mother is associated with cooking Amalfi Coast food; in ETL, Adrienne seeks her
mother's Positano cooking teacher and cookbook, and in OIS, Katy's mother is
often described as a good cook who learned in Positano.  Both mothers are
associated with lemons, with Adrienne's mother's lemon pottery from Positano, and
Katy's mother's lemon dress in Positano.

86.     Each protagonist has a love interest in Positano she pursues while her
long-term relationship at home is murky.  Both love interest serves to help the
protagonist find true self and provide excitement neither has experienced before.
The protagonists and love interest have their first intimate encounter during a big
storm in Positano.

87.     Each front desk manager of the hotel where the protagonist stays are
beautiful local women that become friends with the protagonist.  The manager from
ETL connected Love with an Amalfi local who knew her mother in 1991.  The
manager in OIS admits that she knew the protagonist's mother in 1992.

88.     Both Adrienne's father and Katy's father are named Chuck.

89.    Both stories incorporate a local male friend named Antonio who takes the protagonist on a little white boat at sunset toward Capri at similar plot points.

<u>Plot and Sequence of Events</u>

90.    Positano serves as a metaphor for the last place where her mother was young and free spirited, as well as the place the protagonist can hopefully connect with her mother again.

91.    Each story begins with the protagonist's mother dying from cancer. This causes Adrienne and Katy to feel lost, disconnected from her partner, guilty, angry, and depressed.

92.    In the days leading up to the mother's death, the protagonist emphasizes the mother's use of Aveeno face cream.

93.    In both deathbed scenes, Chuck, is downstairs in the kitchen while both daughters are beside her mother.

94.    Both protagonists are Jewish and reference Jewish death services and rituals.

95.    Throughout her childhood, each protagonists' mother romanticized Amalfi as a magical, special, and transformative place.  This triggers the inexplicable desire to travel to Amalfi alone, never having visited before.

96.    Each protagonist has a confusing but loving goodbye with her California-based male partner of five years, as she travels to Positano from California, insisting on going alone.  The relationship is uncertain, complicating the level of commitment each feels towards her partner while visiting Amalfi.  While in Amalfi, each partner constantly tries to reach the female protagonist via phone.

97.    Each experiences a moment of regret once she arrives in Positano for uprooting her life to find some connection to her mother across the world.

98.    Each story incorporates a vacillating timeline. In ETL, the story flashes from 2017 to 1991 when the protagonist's mother visited Positano.  In OIS, the story

flashes from 2019 to 1992 when the protagonist's mother lived in Positano.  In the July 2020 draft of ETL, Love mistakenly wrote that her mother visited Amalfi in 1992 and later changed it to 1991.

99.    The front desk manager greets each protagonist promptly upon arrival and becomes a good friend to the protagonist throughout the story.  The front desk manager is described as beautiful.

100.   The protagonist quickly discovers a hanging terrace at the hotel, a powerful symbol of the memories her mother made of Amalfi in specifically describing the terraces.

101.   Near the end the front desk manager in ETL connects the protagonist to a woman who knew her mother in 1991.  In OIS, the front desk manager admits she knew the protagonist's mother in 1992.

102.   The female protagonist meets a love interest while in Positano, Peppe for Adrienne and Adam for Katy.  Peppe is a local who works in hotels and as a tour guide.  Adam is an American who visits Positano often and works in hotel acquisitions.

103.   Each develops a romantic relationship with the love interest while the relationship with her partner in California remains murky.  The couple has their first sexual encounter at their hotel during a big storm.

104.   The Italian boyfriend helps the female protagonist stay true to herself and find adventure in ways that her partner at home could not.  Each Peppe and Adam ask the female protagonist various personal questions about herself and her family.

105.   At similar points, Adrienne and Katy cook meals her mother made while in an Amalfi apartment with a kind stranger who parallels her mother.  Each grocery shops for the dinner with the help of the maternal character.  For Adrienne,

this is her host mother, Rosa, and for Katy this is the young version of her mother, Carol.

106.   Each protagonist expresses that she thought she would never eat those meals again.  They are each given basic tasks like chopping and slicing, since neither protagonist knows how to cook.

107.   Frank Sinatra plays during dinner in both stories.  The Sinatra song appears in the July 2020 draft that was shared with DeLone but was edited out in the February 2021 draft.

108.   After dinner, each protagonist removes her dress in front a mirror while the wind blows through an open window.

109.   Each protagonist befriends a local boat driver named Antonio.  He takes Adrienne and Katy around Amalfi on a little white boat at sunset toward Capri.  In OIS Antonio also takes Katy on the water to spread her mother's ashes.

110.   Each experiences a transformative trip that brings her to a new understanding of herself, her mother, and their relationship.  Throughout, each woman calls upon her mothers' spiritual guidance, where Adrienne visualizes her mother with a checkered racing flag, encouraging her to "race" in the right direction. Katy relies upon her mother's guidance as she speaks with her throughout the story. Both discover a new part of their mothers' personality before marriage and children.

111.   In the end, each protagonist has a full-circle moment with her mother's ashes.  Each has a photograph of her young mother in Positano with the ashes.  This scene provides closure for each character as Adrienne describes rewriting the story of her life to find peace and Katy discusses history as a re-writeable fiction to find peace.

<u>Motifs</u>

112.   The motif of cooking is significant and expressed in substantially similar ways.  Neither protagonist is able to cook while her mother is consistently

associated with good food, cooking, and hosting dinner parties.  In ETL, Adrienne is seeking out her mother's Italian cooking teacher to try and replace her mother's handwritten cookbook.  Throughout her childhood, Adrienne's mother cooked Italian meals that she learned while spending time in Positano.  Throughout her story, she flashes back to those moments in her childhood home with her mother cooking those meals.  In OIS, Katy's mother cooked Italian meals she learned while she was in Positano.  Katy consistently flashes back to her childhood home with her mother cooking those meals.  Each protagonist is able to have one of her mother's meals, once again, in Positano as prepared by someone connected to her mother.  For Adrienne, it is Rosa, the mother of her adopted family in Positano.  For Katy, it is the younger version of her mother in Positano, while she stays with Monica at the hotel, who refers to herself as Katy's "family" while she is there.

113.   Both stories place a specific emphasis between the mother and Aveeno face cream.  In an attempt to bring peace to her mother as she died, Adrienne told her mother she was getting married.  Adrienne's mother pointed to an ad in a catalog for Aveeno face cream.  Similarly, Katy's mother is described as using Aveeno "right up until the end." *See* Rebecca Serle, One Italian Summer: A Novel 192 (Atria Books, 2022).  Not only is the emphasis on Aveeno face cream, but the product is used or referenced in connection with her mother's death.

114.   Both authors incorporate a motif of gold throughout their work in similar ways.  While a gold theme may be *scenes a faire* or an uncopyrightable idea, both authors incorporate it in highly specific ways. Generally, gold is associated with their dreams, fantasies, and light.  And also, both protagonists embody gold through personal clothing items and see the light on their skin in Amalfi.

115.   Love uses gold imagery while she tells the "wedding lie" to her mother to bring her peace as she was dying and in connection to Positano's fantasy.  "I'm getting married.  At sunset.  At a golden hotel.  I'll wear a gold dress and a gold veil.

My hair will be gold.  All the place settings, everything, all of it, gold."  Adrienne
Love, Eat the Lemon, July 21, 2020 Draft 9 (Unpublished, 2020).  "I found the
golden wedding lie in my mind."  *See* Love, Eat the Lemon, July 21, 2020 at 11.
"In the golden light of that chaotic ceramic tiled room . . . ."  Love, Eat the Lemon,
July 21, 2020 Draft at 75.  "Hotel of the Golden Sunset" and "Golden Hotel" Love,
Eat the Lemon, July 21, 2020 Draft at 97, 100.

116.    Serle similarly uses gold to describe Positano's fantasy. "All around the
light is golden and liquid and heavy . . . ."  Serle, One Italian Summer at 30. "[T]he
light moves from drunken, heavy and golden to delicate, fleeting."  Serle, One
Italian Summer at 34.  "[T]he golden dome high overhead," "that familiar haze of
golden, warm light bathing the city in a hue only Italy knows," "bathed in the
golden Italian light," "bottle of golden perfume."  Serle, One Italian Summer at 96,
114, 143, 192.

117.    Both stories also connect the mothers to lemons. In ETL, a tall ceramic
fountain outside of Adrienne's hotel is decorated with lemons "the exact color [and]
the exact shape . . . of [her] mother's lost ceramics."  Adrienne Love, Eat the
Lemon, Feb. 25, 2021 Draft 24 (Unpublished 2021).  The ceramics were from
Amalfi and kept in Adrienne's childhood kitchen, to which she flashes back
throughout the story, specifically describing the lemon-decorated ceramics.  Love,
Eat the Lemon, Feb. 25, 2021 Draft at 17.  In OIS, the young version of Katy's
mother is introduced with lemons on her dress.  Serle, One Italian Summer at 58.
Later, Katy picked up an apron printed with lemon trees and is transported back to
her mother's kitchen where her mother wore a lemon apron.  Serle, One Italian
Summer at 98.

### Themes

118.    The basis of each story is exploring the journey of grief after the death
of a mother from cancer.  This is the primary theme that drives each story, as the

female protagonist chronicles her experience in connecting with her mother in Amalfi.  Amalfi serves as a safe place in which the protagonist can experience her grief, alone.

119.   Each protagonist understands her mother in a new way by the end of the story, achieving the connection she sought by traveling to Amalfi.  Adrienne and Katy wanted to connect to her mother through a place where she was youthful and lively.  Each harbored resentment for her mother as her mother left Adrienne and Katy at home while she explored the Italian coast.  However, Adrienne and Katy are, themselves, transformed by Amalfi and understand her mother's romanticization of the town.

120.   Their insistence to travel to Amalfi alone is explained as this transformation is one that must be undertaken internally.  Not only does she understand herself, but Adrienne and Katy understand her mother in an entirely new way.

Mood and Pace

121.   Each mother's death at the beginning of the novels sets a sad, grief-stricken mood.  The reader empathizes with the death of a close relative and the lost feeling that ensues.  Adrienne and Katy exhibit the stages of grief as they are sad, angry, and in denial of their mother's death.  This drives their romantic relationships further apart, as Adrienne and Katy do not rely on their partners for help.  The protagonist feels alone and lost.

122.   However, an inexplicable desire to travel to Positano, Italy washes over each protagonist and leads to an uncertain end to their relationship.  The reader feels the desperation in trying to connect with each protagonists' mother.  For both, Positano is the last place her mother was young and free.  Each protagonist seeks out that version of their mother, knowing the only way to do it is by traveling to the

Amalfi Coast.  The overall theme of the first act is sad and grief-stricken, but with hope for a connection in Italy.

123.   Once in Positano, the reality of their isolation becomes prevalent.  Each becomes angry and scared, questioning why she uprooted her life by going to Italy alone and destroying her five-year relationship.  The reader feels the isolation and directionless desire to connect with her mother's youthful spirit.

124.   Next is the turning point in which each protagonist gains direction and connection.  For Adrienne, she connects with a family that resembles the idealized version of her own.  She is adopted into their loving family as Adrienne struggles with flashbacks to her own tumultuous upbringing and mother's death.  For Katy, she connects with her actual family — the younger version of her mother.  In ETL, the idealized version of family that Adrienne finds in Positano is her host family in Italy.  Joyful exuberance comes off the page as the reader follows Adrienne and Katy on a once in a lifetime adventure meeting new people, drinking and eating, and finally connecting to her mother.

125.   In the end, each character has a new sense of self and independence.  Adrienne gains confidence as she connects with the idealized version of her family in Positano.  She is a woman reborn from her trip in Positano.  Katy gains new confidence and independence.  She no longer depends on others for her decisions.  Katy connects to the younger version of her mother through Positano magic that brough the thirty-year-old Carol and Katy together.  The stories end with hopeful, heartfelt, and empowering moods that is encompassed by a new sense of self in the protagonists.

126.   On information and belief, Defendants not only copied Love's ETL Work and misappropriated her life story, but they attempted to provoke Love's mental breakdown and destroy her life.  Included in these actions were twisting the ETL Work and manuscript to cast Love in a negative light with the purposeful aim

of isolating her from her friends and colleagues and leaving her without support.
Discovery in this case is expected to reveal further details of the acts taken in
furtherance of the alleged conspiracy and to identify each of the individuals and
entities involved.

127.   For all causes of action, and at all relevant times, defendants were
agents of one another as their parent, subsidiary, affiliate, employee, agent,
representative, predecessor, successor, or assign.

128.   Defendants acted individually, in concert, or as joint business venture
to use acquire, share, and profit from Plaintiff's work. Defendants knew, were
aware, or should have known that the work was that of Plaintiff.

129.   Therefore, all and each of them, are jointly and severally liable.

### CAUSE OF ACTION—Copyright Infringement

130.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by
this reference, as if set forth in full herein.

131.   Plaintiff Love is the author and owner of the copyrights in and to her
original ETL Work, including under Section 106 of the Copyright Act, the
"exclusive rights to do and to authorize" (1) *reproducing* the ETL Work, (2)
*preparing derivative works* based upon the ETL Work, (3) *distributing* copies of the
ETL Work, (4) *performing* the ETL Work, and (5) *displaying* the ETL Work.

132.   This claim for copyright infringement is asserted against each
Defendant because on information and belief, each Defendant acted in violation of
one or more of Love's copyrights, including but not limited to directly engaging in
infringing acts, contributing to others' infringing acts, inducing others' infringing
acts, and/or being vicariously responsible for others' infringing acts.

133.   Upon information and belief, each Defendant had access to the
copyrighted ETL Work.

134.   Upon information and belief, without authority from Plaintiff, each Defendant willfully and intentionally copied original expression and/or otherwise violated one or more of Love's exclusive copyrights in and to the ETL Work, causing infringement in the form of substantial similarities between the ETL Work and OIS, indeed striking similarities.  Upon information and belief, each Defendant infringed by reproducing the ETL Work, preparing derivative works based upon the ETL Work and/or distributing copies of the ETL Work.

135.   Upon information and belief, each Defendant also is liable and accountable for others' infringement because it knew or should have known of the infringing activity, it induced or materially contributed to the activity, it profited directly from the infringing activity, and it had the right and ability to supervise or control the infringing activity.  For example, upon information and belief, each Defendant is liable for contributory copyright infringement because it induced, caused, or materially contributed to the infringing conduct, and each Defendant is liable for vicarious copyright infringement because it had the right and ability to supervise the infringing activity and a direct financial interest in the activity.

136.   Plaintiff is entitled to damages including the actual damages suffered as a result of the infringement, contributory and vicarious infringement, the profits of each Defendant attributable to the infringement, and statutory damages including under 17 U.S.C. § 504(c) related to each Defendant's willful infringement.

137.   Upon information and belief, each Defendant continues to infringe Plaintiff's exclusive copyrights, causing further damage and irreparable injury including professional, artistic and reputational harm.  Such irreparable injury cannot be remedied adequately unless each Defendant is enjoined immediately from further copyright infringement, and commanded to rectify the status quo ante.

## **CAUSE OF ACTION—Breach of Fiduciary Duty**

138.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

139.   This claim for breach of fiduciary duty is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, WME, S&S, Paramount, Temple Hill, TFC, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, Glick, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone, and Serle.

140.   Each Defendant owed Plaintiff duties of care and undivided loyalty.  At all times relevant, each Defendant created, accepted and acted in a fiduciary relationship of great trust, and acted for the benefit of Love.

141.   For example, each Defendant owed Plaintiff fiduciary duties because, on information and belief, each Defendant possessed and reviewed the ETL Work and had duties to correctly attribute and/or use this creative work correctly, particularly to the accepted standard of the publishing and other creative industries.

142.   By reason of the fiduciary relationship, each Defendant owed and owes Plaintiff the highest obligation of good faith, fair dealing, loyalty and due care in all dealings with Love as well as a duty to keep Love adequately and accurately informed on all issues regarding the copyrighted ETL Work, manuscript, revelations, distributions, and any and all profits and monies that instead were secretly made and controlled by others.

143.   Each Defendant breached its fiduciary duty including by knowingly acting against Plaintiff's interests in connection with her copyrighted ETL Work and securing the prospective business advantage of the ETL Work for Love exclusively, including by allowing or even providing access to Love's copyrighted ETL Work by unauthorized third parties, including but not limited to Love's ETL manuscript.

144.   Among other breaches, each Defendant failed to adhere to its obligations under the parties' agreements to duly secure Love's copyrighted ETL

Work and related prospective advantage, keep Love reasonably updated as to the status of her opportunities, and distribute Love funds in the form of profit sharing, dividends, or other income generated by the ETL Work including the manuscript, back to Love per the terms of the parties' agreements.  Instead, each Defendant severed its relationship with Love, withdrew her access to information, and failed or otherwise thwarted her ability to communicate with the persons responsible for funds and advantages to which Love was entitled.  These actions were done without due care for the protection of Love's rights.

145.    Plaintiff did not informed consent to any of the breaching conduct of each Defendant.

146.    Plaintiff was harmed as a result of each Defendant's breach of its fiduciary duty to Love, which harm was foreseeable including irreparable harm to Love's career and reputation, and actual damages from losing the opportunity to publish and financially benefit from her copyrighted ETL Work, including but not limited to her manuscript and related deals.

147.    As a direct and legal result of said breach of fiduciary duty, Plaintiff has suffered economic damage and loss of valuable security interests in the subject intellectual property, income, and goodwill, resulting in damages according to proof at trial.

148.    On information and belief, Defendants never intended to comply with their fiduciary commitments and oral and written promises to Plaintiff, and instead engaged in a course of conduct to frustrate Plaintiff's ability to protect Plaintiff's intellectual property and interests.  Defendants have been unjustly enriched accordingly.

149.    Plaintiff suffered immeasurable career setbacks and immense emotional suffering from each Defendant's breach of fiduciary duty, as the ETL Work and

manuscript was not only her creative work of authorship but a personal memoir of some of the most intimate moments of her life.

150.   Each Defendant's conduct was a substantial factor in causing Love's harm.

151.   Defendants acted willfully, maliciously, oppressively, and in conscious disregard of the rights of Plaintiff and their fiduciary duties.  As such Plaintiff is entitled to punitive damages.

152.   Upon information and belief, each Defendant continues to breach its fiduciary duty, causing further damage and irreparable injury including professional, artistic and reputational harm.  Such irreparable injury cannot be remedied adequately unless each Defendant is enjoined immediately from further breach of fiduciary duty, and commanded to rectify the status quo ante.

## CAUSE OF ACTION—Breach of Contract

153.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

154.   This claim for breach of contract is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto, and AdeLone, each of whom entered into one or more written and/or oral agreements to represent, promote and/or market Plaintiff's ETL Work and intellectual property, including the ETL manuscript.

155.   Plaintiff has performed all obligations, or was legally excused from doing so, due under said agreements.

156.   Defendants have breached said agreements by failing to perform all of their obligations under the agreements, failing to pay sums due to Plaintiff, and otherwise failing to complete the agreements per their terms.

157.   As a result, Plaintiff has been damaged in an amount to be proven at trial.

**CAUSE OF ACTION—Promissory Estoppel**

158.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

159.   This claim for promissory estoppel is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto, and AdeLone, each of whom made promises through oral and written representations that the ETL Work and the intellectual property owned by Plaintiff would be duly managed and cared for by each Defendant, for the purpose of shopping the ETL manuscript to interested buyers, with access appropriate and in accordance with the standards in the industry, and with each Defendant to be responsible for the protection and the distribution of profits generated by the property.  Defendants agreed that they would care for the property, the monies generated and the distribute them properly per those agreements.

160.   Each Defendant should have reasonably expected that Plaintiff would rely on such promises.

161.   Plaintiff did in fact justifiably rely on those promises by allowing complete access and control of the intellectual property, specifically the ETL manuscript, in order to facilitate those ongoing legitimate business purposes, per agreements.  Accordingly, each Defendant should be estopped from taking any action that was contrary to the written and oral promises made by them to Plaintiff.

162.   As a result of each Defendant's false promises and misrepresentations, Plaintiff suffered damages in an amount according to proof at trial.

**CAUSE OF ACTION—Intentional Interference With Contractual Relations**

163.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

164.   This claim for intentional interference with contractual relations is asserted against Defendants Airbnb, SMP, Gotham, 3 Arts, CAA, WME, S&S,

Paramount, Temple Hill, TFC, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, Glick, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone and Serle.

165.    Plaintiff claims that each Defendant intentionally interfered with the contracts related to Plaintiff's ETL Work.

166.    Plaintiff had various agreements and contracts with Defendants, and each Defendant knew of those contracts.

167.    Each Defendant's conduct prevented performance or made performance more expensive or difficult.

168.    Each Defendant intended to disrupt the performance of those contracts or knew that the disruption of performance was certain or substantially certain to occur.

169.    Plaintiff was harmed because she lost all profits, control, and goodwill intended by those contracts.

170.    Each Defendant's conduct was a substantial factor in causing Plaintiff's harm by their despicable acts.

## CAUSE OF ACTION—Tortious Interference With Business Advantage

171.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

172.    This claim for tortious interference with business advantage is asserted against each Defendant.

173.    Plaintiff claims that each Defendant intentionally interfered with the economic relationships related to Plaintiff's ETL manuscript and those having access to it.

174.    Those economic relationships most probably would have resulted in an economic benefit to Plaintiff because of the windfall of benefits taken by each Defendant who copied her intellectual property and otherwise interfered with her agreements.

175.    Plaintiff will prove that she was in an economic relationship that probably would have resulted in an economic benefit to her.

176.    Plaintiff will prove that each Defendant knew of those economic relationships.

177.    Each Defendant engaged in misrepresentation and fraud.

178.    Plaintiff will prove that by engaging in this conduct, each Defendant intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

179.    Plaintiff will show that the relationship was disrupted by each Defendant's actions.

180.    Plaintiff was harmed, and each Defendant's conduct was a substantial factor in causing Plaintiff's harm.

### **CAUSE OF ACTION—Intentional Misrepresentation**

181.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

182.    This claim for intentional misrepresentation is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, WME, S&S, Paramount, Temple Hill, TFC, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, Glick, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone, and Serle.

183.    Plaintiff is informed and believes that each Defendant misrepresented orally and/or in writing that it would care for Love's ETL Work and related intellectual property, hold it in trust for Love, use due care not to disclose it to any unauthorized third parties, and distribute it properly including per the parties' agreements.

184.    From the outset, each Defendant knew the representations to be false and made them with the intention to deceive, to defraud, and to induce Plaintiff to

act in reliance on these representations in the manner alleged, or with the expectation that Plaintiff would so act or fail to act in reliance of those misrepresentations by each Defendant.

185.   Plaintiff, at the time these representations were made by each Defendant and at the time Plaintiff took the actions alleged herein, was ignorant of the falsity of each Defendant's representations and believed them to be true.

186.   In reasonable reliance on these representations, Plaintiff was induced to and did enter into various agreements to give access to the subject property and related websites, thereby granting each Defendant full control of the subject intellectual property and all money generated therefrom.

187.   However, a scheme was devised by Defendants, and their as yet unknown agents devised various methods of deception to instead use Plaintiff's intellectual property for their own personal gain, to Plaintiff's great detriment and loss.

188.   Had Plaintiff known the actual facts, Plaintiff would not have entered into such agreements with Defendants.

189.   Plaintiff's reliance on each Defendant's representations was justified because Defendants held themselves out to professionals and experts in the industry.

190.   As a proximate result of the misrepresentations of each Defendant as alleged herein, Plaintiff entered into the alleged agreements, expended time and energy, and whose business endeavors paid substantial sums all to the benefit of each Defendant.  Plaintiff's funds taken by Defendants have never been repaid.

191.   The aforementioned conduct of each Defendant was intentional misrepresentation, deceit, and concealment of material facts known to each Defendant made with the intent to deprive, and succeeded in depriving, Plaintiff of her intellectual property and legal rights and/or otherwise causing injury in an amount to be determined at trial.

192.    Such conduct was furthermore despicable and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### CAUSE OF ACTION—Negligent Misrepresentation

193.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

194.    This claim for negligent misrepresentation is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, WME, S&S, Paramount, Temple Hill, TFC, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, Glick, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone, and Serle.

195.    Plaintiff is informed and believes that each Defendant misrepresented orally and/or in writing, or impliedly, that it intended to use Plaintiff's intellectual property solely for the specified and agreed upon purposes, not to give aways the rights to unauthorized persons.

196.    The actions and representations of each Defendant was negligent and without due regard.

197.    The representations made by each Defendant were false and at all times intended to be false or were negligently false and mislead Plaintiff or they were grossly wanton and negligent in that each Defendant should have known that they would not have been able to comply with their representations.

198.    Plaintiff, at the time these representations were made by each Defendant and at the time Plaintiff took the actions alleged herein, was ignorant of the falsity of Defendants' representations and believed them to be true.

199.    In reasonable reliance on these representations, Plaintiff was induced to and did enter into various agreements to give access to Defendants to shop the ETL

manuscript to interested parties for the benefit of Plaintiff.  But each Defendant instead took Plaintiff's property for its own personal benefit.

200.   Had Plaintiff known the actual facts, Plaintiff would not have entered into such agreements with Defendants.

201.   Plaintiff's reliance on Defendants' representations was justified because each Defendant held itself out to a professional and expert in the industry. Plaintiff also performed material due diligence on the transactions being entered into with each Defendant, and did not discover any potential problems.

202.   As a proximate result of the misrepresentations of each Defendant as alleged herein, Plaintiff entered into the alleged agreements, expended time and energy, and whose business endeavors paid substantial sums all to the benefit of Defendants.  Plaintiff' funds generated form her intellectual properties have never been repaid.

203.   The aforementioned conduct of each Defendant was intentional misrepresentation, deceit, and concealment of material facts known to Defendants and made with the intent to deprive Plaintiff of her property and legal rights and/or otherwise causing injury in an amount to be determined at trial.

204.   Such conduct was furthermore despicable and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### CAUSE OF ACTION—Negligence

205.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

206.   This claim for negligence is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, WME, S&S, Paramount, Temple Hill, TFC, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, Glick, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone, and Serle.

207.   Plaintiff claims that she was harmed by each Defendant's negligence.

208.   Plaintiff will prove that each Defendant had a duty to act as a reasonable, professional businessperson.

209.   Plaintiff will show that each Defendant breached that duty by acting unreasonably, with a lack of any care and/or with an extreme departure from what a reasonably careful person would do the same situation to prevent harm to others.

210.   Plaintiff was harmed because she lost the rights to control her own intellectual property, and did not receive any monies, goodwill, or any benefit from their sale, use, or control by Defendants.

211.   Each Defendant's negligence was a substantial factor in causing plaintiffs harm because they took control of Plaintiff's intellectual property and all money generated therefrom and used for their own purposes.

212.   Plaintiff was damaged from loss of use and great sums generated form the use of her property by Defendants in an amount to be proved at trial period.

## CAUSE OF ACTION—Conversion

213.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

214.   This claim for conversion is asserted against Defendants Airbnb, SMP, Folio, Gotham, 3 Arts, CAA, Kleinman, Harris, Rusoff, Bohn, Gargagliano, Gadd, Zloto and AdeLone.

215.   Plaintiff is the owner of the funds, goodwill, and intellectual property rights, along with all interests and derivatives therefrom that were taken by Defendants.

216.   Defendants have interfered with Plaintiff's intellectual property, in a way beyond what was agreed upon by the parties.

217.   Plaintiff has not consented to each Defendant's taking her property, derivative business and good will, in the manner alleged.  Each Defendant has taken

Plaintiff's property and converted it to their own use, without Plaintiff permission, and in contravention of the parties' expectations and/or agreements.

218.    As a direct and proximate cause of each Defendant's fraudulent conduct and false promises, Plaintiff has suffered substantial compensatory, incidental and consequential damages.

219.    These actions were also intentional and fraudulent, entitling Plaintiff to seek punitive or exemplary damages against each Defendant.

### CAUSE OF ACTION—Intentional Infliction of Emotional Distress

220.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

221.    This claim for intentional infliction of emotional distress is asserted against Defendants Airbnb, SMP, Gotham, 3 Arts, CAA, WME, S&S, TFC, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone and Serle.

222.    Plaintiff claims that each Defendant caused her to suffer severe emotional distress.

223.    Each Defendant's conduct was outrageous because they took not just her intellectual property, but her own personal story that she lived and stole all money from its theft and sale.

224.    Plaintiff did in fact suffer severe emotional distress.

225.    Each Defendant's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

### CAUSE OF ACTION—Stalking

226.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

227.    This claim for stalking is asserted against Defendants Airbnb, WME, S&S, TFC and Serle.

228.   Plaintiff was harmed by each Defendant's actions stalking her.

229.   On information and belief, each Defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass Plaintiff to get her to give up the rights to her intellectual property through fear and intimidation.

230.   Defendants' pattern of conduct caused Plaintiff to reasonably fear for her safety, and the safety of her family and friends.

231.   Defendants' actions caused Plaintiff to suffer substantial emotional distress resulting in severe anxiety, depression, and suicidal ideations.

232.   Defendants' pattern of conduct would cause any reasonable person to suffer similar substantial emotional distress.

233.   Defendants' actions caused Plaintiff great damages in an amount to be proved at trial.

## CAUSE OF ACTION—Conspiracy

234.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

235.   This claim for conspiracy is asserted against Defendants Airbnb, SMP, Gotham, 3 Arts, CAA, WME, S&S, TFC, Rusoff, Bohn, Gargagliano, Gadd, Zloto, Malone, Stone, AdeLone, Todd, Sagnette, Elbers, McGuire, SdeLone and Rebecca Serle.

236.   Plaintiff claims that she was harmed by each Defendant's misrepresentations and that each Defendant is responsible for the harm as part of a conspiracy to convert the intellectual property to its own by fraud.

237.   Plaintiff alleges that two or more of the Defendants agreed to convert the ETL manuscript to their own and for their own benefit through various deceptive acts to obtain access and benefits derived from Plaintiff's intellectual property.

238.    Defendants made said agreements orally, in writing, and were implied by the conduct of the parties.

239.    Each Defendant was aware that the other Defendant conspirators were aware that other Defendants planned to defraud Plaintiff of the rights, benefits, and monies related to her intellectual properties.

240.    Each Defendant agreed with co-conspirators and intended that the fraud be committed and was committed by Defendants to Plaintiff's harm.

## CAUSE OF ACTION—B&P § 17200 et seq.

241.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

242.    This claim for unfair business practices is asserted against each Defendant.

243.    Given the various alleged misrepresentations, wrongful acts, unconscionable and inequitable practices, breach of fiduciary duties, etc. hereinabove, each Defendant also has violated California Business and Professions Code Section 17200 *et seq.* by engaging in unfair business practices that were intended to and did essentially steal and convert Plaintiff funds to Defendants' possession by way of a fraudulent purpose and means.

244.    Plaintiff is therefore entitled to the remedies allowed pursuant to Business and Professions Code Section 17200 *et seq.*

## CAUSE OF ACTION—Accounting

245.    Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

246.    This claim for accounting is asserted against each Defendant.

247.    Defendants have improperly accepted the benefit of the intellectual property belonging to Plaintiff, related to the subject property and income from the ETL Work.  Defendants have failed to account for monies generated by Plaintiff's

property that Defendants were holding in trust that were to be used only for those businesses purposes expressly agreed to or in the normal course of those businesses.

248.  Any distributions, sales, or monies generated form the ETL manuscript were first to be presented to Plaintiff and agreed upon by her before they were made. Instead, Defendants have failed to account for these funds belonging to Plaintiff, and to distribute proceeds to Plaintiff pursuant to the parties' agreements.

249.  The amount of money currently owed to Plaintiff is unknown to Plaintiff and cannot be determined without an accounting.

250.  Plaintiff requests that the Court render an accounting between Plaintiff and Defendants determining the correct amount that is owed to Plaintiff.

## CAUSE OF ACTION—Constructive Trust

251.  Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

252.  This claim for constructive trust is asserted against each Defendant.

253.  Plaintiff is informed and believes and thereon alleges that each Defendant has taken Plaintiff's intellectual property, goodwill, and monies generated therefrom by fraudulent and illegal means, in the manner alleged herein.

254.  Plaintiff is informed and believes and thereon alleges that, in the manner pled above, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between individual Defendants and entities such that any individuality and separateness between them have ceased, and that Defendant entities are the alter egos of the other herein Defendants.

255.  By reason of the wrongful manner in which each Defendant obtained Plaintiff's property and related rights, each Defendant is an involuntary trustee holding said business interests and any related funds in constructive trust for Plaintiff, with the duty to re-convey the same forthwith.

256.   In such event that it is found that said interests or funds no longer are being held by the Defendants, after having traced the funds, the entity, individual, person, group, organization, institution or agency shall be deemed an involuntary trustee holding said funds and business interest for the benefit of Plaintiff, with the duty to re-convey the same forthwith.

257.   In the event said funds (or interests) were used to purchase a product, real or personal property, stock or any other tangible or intangible item, Defendants are constructive trustees of said items holding it for the benefit of the Plaintiff, with the duty to re-convey the same forthwith, to restore the rightful benefit of Plaintiff.

258.   Plaintiff therefore requests this Court to issue a temporary restraining order, preliminary and permanent injunction(s) preventing the Defendants, and each of from using, disbursing, transferring, removing, withdrawing and/or disposing Plaintiff's funds and/or renting, selling, or otherwise encumbering the subject property.

## CAUSE OF ACTION—Declaratory Relief

259.   Plaintiff hereby alleges and incorporates the foregoing paragraphs by this reference, as if set forth in full herein.

260.   This claim for declaratory relief is asserted against each Defendant.

261.   Plaintiff and Defendants have entered into agreements for the economic advantage of Plaintiff's copyrights and other valuable assets.

262.   Plaintiff asks this Court to clarify and the obligations and responsibilities of Defendants.

263.   Nevertheless, Defendants continue to hold access, control, and all monies generated form Plaintiff's property, and their related accounts so Plaintiff cannot see what monies are owed, and cannot use her own property controlled by Defendants.

264.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain her rights and Defendants can their duties under the alleged agreements.  The unsettled state of affairs continues to burden and financially impact Plaintiff to her material detriment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Love prays for judgment as follows:

A.    That each Defendant willfully and intentionally infringed Plaintiff's registered copyrights, including contributory and vicarious infringement, in violation of 17 U.S.C. § 101;

B.    Preliminary and permanent injunctive relief addressing ongoing copyright infringement causing irreparable harm to Plaintiff;

C.    That each Defendant breached fiduciary duties to Plaintiff;

D.    That each Defendant breached contracts with Plaintiff;

E.    That each Defendant committed promissory estoppel;

F.    That each Defendant intentionally interfered with Plaintiff's contractual relations;

G.    That each Defendant tortiously interfered with Plaintiff's prospective business advantage;

H.    That each Defendant committed intentional misrepresentation;

I.    That each Defendant committed negligent misrepresentation;

J.    That each Defendant committed negligence;

K.    That each Defendant committed conversion;

L.    That each Defendant committed intentional infliction of emotional distress;

M.    That each Defendant committed stalking;

N.    That each Defendant committed conspiracy;

O.    That each Defendant violated Cal. Bus. & Prof. Code § 17200 *et seq.*;

P.    For an accounting;

Q.    For a constructive trust;

R.    For declaratory relief;

S.    Compensatory damages, including a disgorgement of any profits realized by Defendants, in an amount to be determined at trial;

T.    Actual, consequential and special damages in an amount to be determined at trial, including statutory damages and unjust enrichment under the Copyright Act;

U.    Punitive damages;

V.    Reasonable and necessary costs of suit and attorneys' fees;

W.    Prejudgment and post-judgment interest at the highest lawful rates; and

X.    Such other and further relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and L.R. (C.D. Cal.) 38-1, Plaintiff hereby demands a jury trial on all the issues so triable in this action.

Respectfully submitted,

Dated:  August 20, 2025                    **SHIELDS LITIGATION PC**

_____

Attorneys for Plaintiff

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

4        I hereby certify that on August 20, 2025, I electronically transmitted the

5    foregoing document using the CM/ECF system for filing, which will transmit the

6    document electronically to all registered participants as identified on the Notice of

7    Electronic Filing, and paper copies have been served on those indicated as non-

8    registered participants.

9

10   Dated:  August 20, 2025                    **SHIELDS LITIGATION PC**

11

12

13                                             _____

14                                             Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28